IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JOSEPH CARRARO d/b/a
CARRARO'S PIZZA,

        Plaintiff,

vs.

U.S. WEST DIRECT, a corporation,      No. CIV-98-0148 MV/WWD

        Defendant.

# MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court upon Defendant's Motion to Compel Arbitration and to Stay Proceedings filed April 7, 1999 **[Doc. No. 29]**. The Court, having considered the motion, response, reply, relevant law, and being otherwise fully informed, finds that the motion is well taken and will be **GRANTED.**

### BACKGROUND

Plaintiff, Joseph Carraro, filed suit against Defendant, U.S. West Direct ("U.S. West") in the Second Judicial State Court for damages alleging four counts: (1) Tortious Interference, (2) Misrepresentation, (3) Unfair Trade Practices, and (4) Breach of Contract. Carraro's claim arises out of a contract he signed with U.S. West for an ad in the Yellow Pages for his pizza parlor business. U.S. West removed the case based on federal diversity jurisdiction.

Carraro was the owner and operator of a small business in Albuquerque known as Carraro's Pizza. Throughout the years when he was in business, Carraro purchased advertising in the Yellow Pages directory published by U.S. West. Carraro alleges that U.S. West made certain mistakes in his ad in the 1992-1993 directory. In response, he entered into negotiations with U.S.

West for compensation. Carraro alleges that the result of these negotiations was a "take it or leave it" offer for advertising in the 1994-1995 Yellow Pages. Carraro further alleges that this offer was made on the last day possible for inclusion in next year's Yellow Pages.

Pursuant to this offer, which Carraro accepted in what he calls an "adhesion contract," Carraro alleges that he was forced to change his business phone numbers, to pay a higher price for the advertising than was promised by U.S. West representatives and to release all claims against U.S. West. When he could not make the payments on the advertising, Carraro alleges that U.S. West disconnected phone service for the numbers listed in the ad, and his business suffered.

While Plaintiff asserts claims sounding in tort and contract, his description of his claims in the Initial Pre-Trial Order makes it clear that all of his claims arise out of his contracts for advertising services with U.S. West: "Defendant published in its Yellow Pages incorrect information and omitted correct information. Mr. Carraro's business was dependent upon Yellow Page advertising. The acts and omissions of defendant caused damages to Mr. Carraro's business. He is also claiming punitive damages and a trebling of damages under the New Mexico Unfair Trade Practices Act." (Initial Pre-Trial Order at 3 **[Doc. No. 16]**).

U.S. West has moved to compel arbitration pursuant to an arbitration provision in the contract and to stay the case pending arbitration. Carraro opposes, claiming that certain claims are not arbitrable and that the contract is unenforceable because it is an adhesion contract. In support of his claim, Carraro argues that there was disparity of bargaining power between himself and U.S. West, that U. S. West has monopoly power in that Carraro had no choice other than to advertise in its Yellow Pages directory, that he was not given an opportunity to bargain, that the contract is a standard form agreement, and that the contract was offered on a take-it-or-leave-it

2

basis on the last day possible for inclusion in the next year's Yellow Pages. While Plaintiff points to several cases from other states that have refused to enforce limitation of damages provisions in Yellow Pages contracts, he does not argue that the limitation of damages provision in the contract at hand or any other substantive provision in the contract is unfair or unconscionable.

## CHOICE OF LAW

The Federal Arbitration Act, 9 U.S.C. §§ 1-14 (1982) ("FAA"), applies to a written arbitration provision in "a contract evidencing a transaction involving commerce." 9 U.S.C. § 2. If the FAA applies, "federal law governs the enforcement of and challenges to an arbitration award, even in diversity cases such as this one." *Foster v. Turley*, 808 F.2d 38, 40 (10th Cir. 1986).

The FAA defines "commerce" as "commerce among the several States." 9 U.S.C. § 1. "The requirement that the underlying transaction involve commerce is to be broadly construed so as to be coextensive with congressional power to regulate under the Commerce Clause." *Foster*, 808 F.2d at 40. Even applying this broad construction, the Court finds that the transaction underlying the parties' contract does not involve commerce. While the parties are diverse, there is no indication that Carraro dealt with anyone from U.S. West who was not based in Albuquerque. While phone lines involve interstate commerce, the purpose of the underlying transaction was the provision of advertising services within the Albuquerque area. The Court has not found any cases suggesting that diversity alone is sufficient to satisfy the "commerce" requirement. *See, e.g., Foster*, 808 F.2d at 40 (diverse parties plus transaction involving interstate payments, production and marketing); *Durkin v. Cigna Property & Casualty Corp.*, 942 F. Supp. 481, 485 (D. Kan. 1996) (employment contract requiring employee to handle claims arising in various states); *Sigco*

3

*Sunplant, Inc. v. Harrison*, Civ. A. No. 89-2229-0, 1989 WL 134462, at *2 n.1 (D. Kan. Oct. 18, 1989) (diverse parties and interstate invoicing and payment transactions). Especially in light of indications that the Supreme Court will read the scope of Congress's Commerce Clause power more narrowly, *see e.g., United States v. Lopez*, 514 U.S. 549 (1995) (possession of firearm near high school does not affect interstate commerce), the Court will apply state arbitration law to evaluate U.S. West's motion.

As a federal court sitting by virtue of diversity jurisdiction, the Court applies the choice of law rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). In contracts cases, New Mexico has traditionally applied the "*lex loci contractus*" rule: the place where the "final act" necessary to the formation of the contract occurred "determines the applicable law for the interpretation of the contract." *Eichel v. Goode, Inc.*, 101 N.M. 246, 250 (Ct. App. 1984); *Shope v. State Farm Ins. Co.*, 122 N.M. 398, 400-401 (1996); *F.D.I.C. v. Hiatt*, 117 N.M. 461, 464 (1994); *State Farm Mutual Insurance Co. v. Conyers*, 109 N.M. 243, 247 (N.M. 1989).

The New Mexico Supreme Court has also considered the more modern "significant relationship" test of the Restatement (Second) Conflicts of Laws (1971) §188. *See Stevenson v. Louis Dreyfus Corp.*, 112 N.M. 97, 99 (N.M. 1991); *Conyers*, 109 N.M. at 247-48. Under this analysis, the Court looks to the law of the state which has the most significant connections to the contract. *Stevenson*, 112 N.M. at 99; Restatement (Second) Conflicts of Laws § 196 ("The validity of a contract for the rendition of services and the rights created thereby are determined . . . by the local law of the state where the contract requires that the services, or a major portion of the services, be rendered . . . ."). In its most recent rulings, however, the New Mexico Supreme

Court has reasserted the continuing viability of the *lex loci contractus* rule in the State. *Shope*, 122 N.M. at 400-401; *F.D.I.C.*, 117 N.M. at 464. Only if application of the traditional rule is impractical in the circumstances of the case, or if there is a "countervailing interest that is fundamental and separate from general policies of contract interpretation," will the New Mexico courts consider whether another state has a more significant relationship to the contract, warranting application of that state's laws. *Shope*, 122 N.M. at 400-401; *Stevenson*, 112 N.M. at 99.

Under either of these two tests, the Court finds that New Mexico law governs. The parties entered into the relevant contract in Albuquerque and the parties expected performance in the Albuquerque Yellow Pages.

Defendant points to the choice of law provision in the contract which states that Colorado law will apply to any interpretation of the contract terms. Plaintiff only cites New Mexico law in his Opposition Brief, and Defendant states that the result is the same under either New Mexico or Colorado law. While New Mexico generally enforces choice of law provisions, *see, e.g., Huntington National Bank v. Sproul*, 116 N.M. 254, 257 (1993), the Court has not found any cases addressing whether a choice-of-law provision governs a decision on whether or not the contract will be enforced. Because the Court finds that it would be odd to apply a provision in the contract before determining whether the contract is enforceable, the Court will apply New Mexico law.

## ANALYSIS

New Mexico has adopted the Uniform Arbitration Act, which provides that "[a] written agreement to submit any existing controversy to arbitration or a provision in a written contract to

5

submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract." N. M. Stat. Ann. § 44-7-1 (Michie 1978). The Act further provides that

> On application of a party showing an [arbitration agreement], and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration, but if the opposing party denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination of the issue so raised and shall order arbitration if found for the moving party.

N.M. Stat. Ann. §44-7-2. The Act requires that conflicts be resolved by arbitration when the terms of the contract provide for it. *Daniels Insurance Agency, Inc. v. Jordan*, 99 N.M. 297, 299 (1982).[1] In this case, the contract includes a broad arbitration clause, which provides that "[a]ny controversy or claim arising out of or relating to this Agreement or the breach thereof, other than an action by Publisher for the collection of amounts due under this Agreement, shall be settled by final, binding arbitration in accordance with the Commercial Arbitration rules of the American Arbitration Association . . . ." (Exhibits to Affidavit of Robert Ortiz.) Thus, the Court must enforce the agreement unless Plaintiff can show grounds in law or in equity for the revocation of the contract.

Carraro claims that the arbitration clauses are not enforceable because they are included in unenforceable adhesion contracts. He cites *Albuquerque Tire Co. v. Mountain States Telephone and Telegraph Co.*, 102 N.M. 445 (1985) for the proposition that an adhesion contract is per se unenforceable. However, in *Guthmann v. La Vida Llena*, 103 N.M. 506, 509 (1985), the New

---

[1] The Court notes that the FAA provisions track the New Mexico Arbitration Act provisions, in relevant part, and similarly reflect a policy favoring arbitration. *See* 9 U.S.C. § 2; *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1992). The results then, would likely be the same under New Mexico or federal law.

6

Mexico Supreme Court held that the "determination that a contract is one of adhesion is simply the first step in deciding whether it should be enforced." An adhesion contract becomes unenforceable only where the contract is unconscionable. Unconscionability has both a procedural and substantive element. Procedural unconscionability, like the term "adhesion contract," refers to the circumstances surrounding the contract formation. Substantive unconscionability "is concerned with contract terms that are illegal, contrary to public policy, or grossly unfair." *Id.* at 510. To find substantive unconscionability, the contract terms must be such that "'no [person in his or her] senses and not under delusion would make on the one hand, and . . . no honest and fair man would accept on the other.'" *Id*. at 511 (citation omitted).

Even assuming that Plaintiff has proved that the contract at issue is an adhesion contract, he has failed to point to any substantive provision in the contract that is so grossly unfair as to meet the requirements of substantive unconscionability. All of the points raised by Carraro, including disparity of bargaining power, his lack of alternatives, his inability to bargain, the offer by U.S. West on a take-it-or-leave-it basis on the on the last day possible for inclusion in the next year's Yellow Pages, relate to procedural unconscionability and whether the parties entered into an adhesion contract.

The only specific provision even discussed by Carraro is the limitation of damages clause that provides that a refund of the advertising charges paid is the limit of U.S. West's damages in the event of error or omission. (Exhibits to Affidavit of Robert Ortiz.) While citing cases refusing to enforce these limitation of liability clauses in Yellow Pages advertising contracts, Carraro concedes that the majority of courts have enforced the clauses. New Mexico is in this majority. *Albuquerque Tire Co., Inc. v. Mountain States Telephone and Telegraph Co.*, 102

N.M. 445 (1985) (limitation of liability clause not in contravention of public policy because yellow page advertising is a nonessential service); *Federal Building Service v. Mountain States Telephone and Telegraph Co.*, 76 N.M. 524 (1966) (defendant not entitled to damages caused by error in Yellow Pages advertising where plaintiff had not paid for omitted ad); *see also Helms v. Southwestern Bell Telephone Co.*, 794 F.2d 188, 192 n. 9 (5th Cir. 1986) (citing list of cases upholding the provision). While the New Mexico cases do not provide any analysis, other courts that have considered the question have relied on the availability of other advertising and on the increased rates that would result if the telephone company was held liable for consequential damages resulting from advertising errors. *See, e.g., University Hills Beauty Academy, Inc. v. Mountain States Telephone and Telegraph Co.*, 554 P.2d 723, 726 (Colo. Ct. App. 1976).

Carraro does not indicate anything about the arbitration clause itself that he claims is grossly unfair, and the Court does not see any unfairness in arbitration before the American Arbitration Association. In light of the clear policy to resolve all doubts in favor of arbitration, the Court finds that there is no basis in law or equity to void this contract or any provision in it.

Carraro also argues that his tort and Unfair Fair Practices claims are not subject to arbitration. Starting with the tort claims, "[w]hen parties agree to submit their disputes to arbitration, this applies to 'any potential claims or disputes arising out of their relationships by contract or otherwise.'" *Monette v. Tinsley*, 126 N.M. 748, 975 P.2d 361, 366 (N.M Ct. App. 1999) (quoting *K.L. House Constr. Co. v. City of Albuquerque*, 91 N.M. 492, 494 (1978). The New Mexico Supreme Court further explained that "[o]nce it appears that there is, or is not a reasonable relationship between the subject matter of the dispute and the general subject matter of the underlying contract, the court's inquiry is ended." *K.L. House*, 91 N.M. at 494.

8

Here, Plaintiff's statement of his case in the Initial Pre-Trial report makes it clear that all of his claims arise out of the Yellow Pages advertising that is the general subject matter of the underlying contract. As set out above, Plaintiff states that U.S. West's errors in its Yellow Pages harmed Carraro's business and that he is claiming punitive damages and a trebling of damages under the New Mexico Unfair Trade Practices Act to remedy this harm. (Initial Pre-Trial Order at 3 **[Doc. No. 16]**). The Court therefore finds that all of Carraro's claims fall within the scope of disputes that the parties agreed to arbitrate. While no New Mexico courts have specifically addressed arbitrability of tort claims related to breach of contract like those brought by Carraro, the Court's decision is in accord with the analysis of other courts evaluating the scope of arbitration clauses under the Uniform Arbitration Act and the FAA. *See, e.g., City and County of Denver v. District Court*, 939 P.2d 1353, 1364 (Colo. S. Ct. 1997) (en banc) (under the Uniform Arbitration Act, finding "factual allegations which form the basis of the claim asserted, rather than the legal cause of action pled, should guide the district court in making the determination as to whether a particular dispute falls within the reach of the ADR clause"); *P&P Industries, Inc. v. Sutter Corp.*, 179 F.3d 861, 871 (10th Cir. 1999) (under the FAA, finding tort-based claims fall within the arbitration agreement; "all claims with 'a significant relationship to the [Agreement,] regardless of the label attached' to them, arise out of and are related to the Agreement") (citation omitted).

Plaintiff further argues that claims under the Unfair Trade Practices Act are not arbitrable, citing *United Nuclear Corporation v. General Atomic Co.*, 93 N.M. 105, 126 (1979). However, that case was decided under the FAA and cited an established exception where federal antitrust laws are concerned. *Id.* at 124-25. Carraro does not cite any case law for the argument that the

9

Unfair Practices Act should be subject to a similar exception, and the Court has not found any support for this proposition. Because Plaintiff's Unfair Practices Act claim is essentially a request for enhanced damages relating to the Defendant's alleged breach of contract, the Court finds that these claims fall within the scope of the parties' arbitration agreement, as do all of Plaintiff's other claims.

Section 44-7-2(D) provides that "[a]ny action or proceeding involving an issue subject to arbitration shall be stayed if an order for arbitration or an application therefor has been made under this section . . . .When the application is made in such action or proceeding, the order for arbitration shall include such stay." Pursuant to this Section, having found that all of Carraro's claims are subject to arbitration, the Court hereby stays this case pending arbitration by the parties.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant's Motion to Compel Arbitration and to Stay Proceedings to Arbitration **[Doc. No. 29]** is **GRANTED**. The case will be stayed pending completion of arbitration by the parties.

**IT IS FURTHER ORDERED** that Defendant's request that the Court order Plaintiff to pay the costs and fees incurred by U.S. West in bringing this motion is **DENIED.**

_____
MARTHA VÁZQUEZ
U. S. DISTRICT JUDGE

Attorney for Plaintiff:
Kent Winchester

Attorneys for Defendant:
Lawrence H. Hill
Judith M. Oliva

10